IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| THE CHURCH INSURANCE COMPANY OF VERMONT,  )<br>)<br>Plaintiff,  )<br>)<br>v.  )<br>)<br>COLLINS & LACY, P.C. and  )<br>PETER H. DWORJANYN, ESQ.,  )<br>)<br>Defendants.  )<br>_____ ) | Civil Action No. 3:20-cv-00795-JMC<br><br>**ORDER AND OPINION** |

Plaintiff The Church Insurance Company of Vermont filed this action against Defendants Collins & Lacy, P.C. and Peter H. Dworjanyn, Esq. (together "Defendants") seeking monetary damages for alleged professional negligence and breach of contract. (ECF No. 18 at 6 ¶ 30–8 ¶ 45.)

This matter is before the court by way of Defendants' Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] (ECF No. 10.) Specifically, Defendants assert that the court should dismiss the Amended Complaint (ECF No. 5) because "Plaintiff is not authorized to do business in South Carolina and is therefore barred from bringing this lawsuit under S.C. Code Ann. §§ 38-25-540 and 33-15-102(a)." (ECF No. 10 at 1.) The court observes that Plaintiff declined to file a formal response to the Motion instead advising the court that, for business reasons, Plaintiff has elected not to become authorized to transact business in South

---

[1] The court observes that the Motion to Dismiss was filed before Plaintiffs' Second Amended Complaint. (*Compare* ECF No. 10, *with* ECF No. 18.) However, the parties agree that the issues raised in the Motion to Dismiss "are not affected by the amendment of the Complaint" and "shall remain pending as if it were re-filed in response to the Second Amended Complaint." (ECF No. 16 at 3 ¶ 15.)

1

Carolina. (ECF No. 19.) For the reasons that follow, the court **GRANTS** Defendants' Motion to Dismiss. (ECF No. 10.)

## I.     BACKGROUND FACTS

This case arises out of a 2012 schism within The Episcopal Church ("TEC") in South Carolina, whereby the Diocese of South Carolina and 29 of its parishes attempted to dissociate from TEC without ceding control over certain personal, intellectual, and real property. (*E.g.*, ECF No. 5 at 2 ¶ 7, 4 ¶ 21.) The schism gave rise to multiple lawsuits in both state and federal court. (*Id.*)

Plaintiff is a captive insurance company that insures dioceses, parishes, and other organizations affiliated with TEC, including parishes in South Carolina.[2] (ECF No. 18 ¶ 5.) On June 29, 2015, a group of dissociated parishes (the "Parishes") filed an insurance coverage action against Plaintiff in this court titled *Church of the Redeemer v. The Church Insurance Company of Vermont*, bearing Case No. 2:15-cv-02590-PMD (D.S.C.) (the "Coverage Action"). *Id.* at ECF No. 1 (June 29, 2015). In the Coverage Action, the Parishes claimed that Plaintiff wrongfully refused to defend them against certain counterclaims brought against them in a state court action pursuant to their separate purchases of coverage under the 2012 Master Policy. *Id.* Defendants represented Plaintiff in the Coverage Action. The Coverage Action was dismissed by stipulation

---

[2] As such, before the schism, Plaintiff issued a Master Policy to the Diocese of South Carolina with a policy period of January 1, 2012 to January 1, 2013 (the "2012 Master Policy"). *Church of the Redeemer v. The Church Ins. Co. of Vt.*, Case No. 2:15-cv-02590-PMD, ECF No. 1 at 6 ¶ 21 (D.S.C. June 29, 2015). Various parishes of the Diocese, including parishes that would later dissociate, purchased coverage under the 2012 Master Policy. *Id.* at ECF No. 22 at 2 ¶ 1–4 ¶ 13 (Aug. 10, 2015). When a parish purchased such coverage, it paid its own premium and was issued its own separate certificate of insurance, declarations page, and set of endorsements modifying the Master Policy. *Id.* at 5 ¶ 21.

2

of the parties on November 11, 2015. *Church of the Redeemer*, Case No. 2:15-cv-02590-PMD, ECF No. 30 (D.S.C. Nov. 11, 2015).

According to the Second Amended Complaint in this case, the Parishes made claims against Plaintiff for defense and indemnity coverage in a separate federal court action pursuant to their coverages under the 2012 Master Policy. (ECF No. 18 at 4 ¶ 20.) The gravamen of Plaintiff's claim in this case is that Defendants should have secured a broader release in the Coverage Action so as to avoid any future claims by the Parishes for coverage in the federal action under the 2012 Master Policy.[3] (*Id.* at 5 ¶ 26.)

Defendants' Motion to Dismiss (ECF No. 10) addresses the preliminary issue that, under South Carolina law, Plaintiff cannot bring this case because it is not authorized to transact business in South Carolina. (*Id.* at 1.) Neither the South Carolina Secretary of State nor the South Carolina Department of Insurance has any record of authorizing Church Insurance to transact insurance business in South Carolina, currently or in the past. (*See* ECF No. 10-1.) As this court recently noted in granting a motion to dismiss in another case involving Plaintiff, Plaintiff's lack of authorization is apparent from the public record and is not reasonably subject to dispute. *See Episcopal Church in S.C. v. Church Ins. Co. of Vt.*, Nos. 19-cv-1672-RMG, 19-cv-1713-RMG, 2019 WL 6135701, at *4 (D.S.C. Nov. 19, 2019) ("However, [Church Insurance] nonetheless cannot maintain their filed action, Case No. 2:19-cv-1713, in this Court as [Church Insurance] lacks a certificate of authority to do business in this state."). Further, by letter to this court of May 18, 2020, Plaintiff's counsel acknowledged that, for business reasons, Plaintiff has elected not to become authorized to transact business in South Carolina. (ECF No. 19.)

---

[3] The court notes that Defendants vigorously dispute this claim.

## II.     LEGAL STANDARD

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) "tests the legal sufficiency of the complaint." *Birmingham v. PNC Bank, N.A.*, 846 F.3d 88, 92 (4th Cir. 2017).  A complaint is subject to dismissal unless it "state[s] a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In evaluating the plausibility of a claim for relief, the court must credit the complaint's factual allegations but not its legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  In evaluating a motion to dismiss, the court should consider both the allegations of the complaint and any matter in the public record that is not reasonably subject to dispute.  *Episcopal Church*, 2019 WL 6135701, at *4 & n.5 (considering public records showing Church Insurance was not authorized to transact business in South Carolina on a motion to dismiss); *Hall v. Virginia*, 385 F.3d 412, 424 n.3 (4th Cir. 2004) (holding that it could take notice of publicly available voting data on a motion to dismiss).

## III.     DISCUSSION

As noted, Plaintiff is a captive insurance company that insures Episcopal parishes in South Carolina.  (ECF No. 18 at 2 ¶ 5.)  Under South Carolina law, it is illegal for a captive insurance company to do business in South Carolina "unless it first obtains from the director [of Insurance] a certificate of authority authorizing it to do business in this State." S.C. Code Ann. 38-90-60(B) (West 2020).

Despite this requirement and despite admitting that it issues insurance policies to dioceses and parishes in South Carolina, Plaintiff is not now and has never been authorized to transact insurance business in South Carolina.

Under S.C. Code Ann. § 38-25-540 (West 2020), "[a]n unauthorized insurer is not permitted to maintain any action, suit, or proceeding in this State to enforce a right, claim, or

demand arising out of the transaction of insurance business until the insurer has obtained a certificate of authority to transact insurance business in this State." The statute contains only two exceptions. First, an unauthorized insurer may bring suit "in connection with its investments in this State." *Id.* Second, it may bring suit on an insurance contract that it issued "at a time when it was authorized to do business in the state where the contract was issued." *Id.*

Neither exception applies here. As to the first exception, nothing in the Second Amended Complaint remotely suggests that this case has anything at all to do with Plaintiff's investments in South Carolina. Rather, the case is related to coverage litigation arising out of Plaintiff transacting insurance business and issuing insurance policies in South Carolina. Likewise, as to the second exception, the public record demonstrates that Plaintiff has never been authorized to transact insurance business in South Carolina. Thus, it is clear that Plaintiff was not authorized to transact insurance business in South Carolina in 2012 when it issued the 2012 Master Policy to the parishes, which issuance ultimately gave rise to the Coverage Action. Because neither exception applies, this case is barred by the aforementioned statutory[4] law.[5]

---

[4] While S.C. Code Ann. § 38-25-540 (West 2020) is sufficient to require dismissal of this action, it is worth noting that S.C. Code Ann. § 33-15-102(a) (West 2020) also broadly prohibits any foreign corporation transacting business in South Carolina from maintaining an action in South Carolina until it obtains a certificate of authority from the South Carolina Secretary of State. As discussed, it is clear from the public record that Plaintiff holds no such certificate of authority. It is equally clear that Plaintiff transacts business in South Carolina, as it has routinely issued insurance policies to dioceses and parishes located exclusively in South Carolina. Thus, for this reason as well, Plaintiff cannot maintain this action, and the action must be dismissed.

[5] As the Supreme Court held decades ago, state statutes precluding those not authorized to do business in the state from utilizing the court system apply equally in federal diversity actions. *Woods v. Interstate Realty Co.*, 337 U.S. 535, 538 (1949). This decision is consistent with the above-referenced *Episcopal Church* case in which this court concluded that the statute barred affirmative claims by Plaintiff and, based upon the statute, dismissed a declaratory judgment action that Plaintiff had filed against the Parishes. *Episcopal Church*, 2019 WL 6135701, at *4. In that case, the court noted that "the law in South Carolina is clear"; that "[t]he requirement to have a certificate of authority applies equally to captive insurance companies"; and, that Church Insurance's argument that it could cover risks in South Carolina without running afoul of the statute was unavailing. *Id.* at *4–5. The court characterized S.C. Code Ann. § 38-25-540 (West

## IV.     CONCLUSION

For the foregoing reasons, the court **GRANTS** Defendants' Motion to Dismiss (ECF No. 10) and **DISMISSES** the Second Amended Complaint (ECF No. 18).

**IT IS SO ORDERED**.

*J. Michelle Childs*
United States District Judge

June 8, 2020
Columbia, South Carolina

---

2020) as a "bright line rule that no 'unauthorized insurer' may maintain an action in South Carolina." *Id.* at *5. The same analysis applies in this case, and, because Plaintiff remains unauthorized to transact insurance business in South Carolina, this case must be dismissed.